JS 44
(Rev. 3/99)

## CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neith  replac  nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is requir   or the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM)

**I (a) PLAINTIFFS**

Akrion, Inc. and Akrion Technologies, Inc.

**DEFENDANTS**

Product Systems, Inc.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
Lehigh County, PA      (EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY) _____
Campbell, California

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

David E. Landau
Wolf, Block, Schorr and Solis-Cohen, LLP
1650 Arch Street, 22nd Floor
Philadelphia, PA 19103-2097
(215) 977-2000

ATTORNEYS (IF KNOWN)

**II. BASIS OF JURISDICTION** (PLACE AN X IN ONE BOX ONLY)

☐ 1  U. S. Government
Plaintiff

☐ 2  U.S. Government
Defendant

☒ 3  Federal Question
(U.S. government Not a Party)

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN X IN ONE BOX)

(For Diversity Cases Only)            FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated Or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Anther State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(PLACE AN X IN ONE BOX ONLY)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury — Med Malpractice<br>☐ 365 Personal Injury — Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br><br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Product Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal, 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☒ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reappointrement<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organization<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence HABEAS CORPUS<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | **SOCIAL SECURITY**<br>☐ 861 HIA (1395(f))<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS — Third Party 26 USC 7609 | ☐ 894 energy Allocation Act<br>☐ 895 Freedom of Information<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions |

**V. ORIGIN**          *(PLACE AN X IN ONE BOX ONLY)*          Appeal to District

☒ 1  Original Proceeding
☐ 2  Removed from State Court
☐ 3  Remanded from Appellate Court
☐ 4  Reinstated or Reopened
☐ 5  Transferred from another district (specify)
☐ 6  Multidistrict Litigation
☐ 7  Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**   (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CASE
DO NOT CITE JURISDICTIONAL STATUES UNLESS DIVERSITY.)

Patent and Trademark Infringement  35 U.S.C. Sec. 371 et. seq; 15 U.S.C. 1114, 1125(a)

**VII. REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23     DEMAND in excess of $150,000     JURY DEMAND: ☒ Yes  ☐ No

**VIII. RELATED CASE(S)**  (See Instructions)
**IF ANY**  None

JUDGE _____     DOCKET NUMBER _____

Date   January 30, 2006          SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

PHL:5312409.1

INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

## Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I (a) Plaintiffs - Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved).

**(c) Attorneys.** Enter firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II. Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction is based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an X in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331 where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below: federal question actions take precedence over diversity cases.)

**III. Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV. Cause of Action.** Report the civil statute directly related to the cause of action and give a brief action of the cause.

**V. Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of description, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**VI. Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate's decision.

**VII. Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII. Related Cases.** This section of the JS-44 is used to reference relating pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

(rev. 07/89)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

Akrion, Inc. and Akrion Technologies, Inc.

|                           |   |
|---------------------------|---|
| Plaintiff,                | ) |
|                           | ) |
| v.                        | ) CIV. ACTION NO. _____ |
|                           | ) |
|                           | ) |
| Product Systems, Inc.     | ) |
|                           | ) |
| Defendants.               | ) |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a)  Habeas Corpus — Cases brought under 28 U.S.C. §2241 through §2255.　　　　( )

(b)  Social Security — Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.　　　　( )

(c)  Arbitration — Cases required to be designated for arbitration under Local Civil Rule 53.2.　　　　( )

(d)  Asbestos — Cases involving claims for personal injury or property damage from exposure to asbestos.　　　　( )

(e)  Special Management — Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)　　　　( )

(f)  Standard Management — Cases that do not fall into any one of the other tracks.　　　　( **X** )

| January 30, 2006 | David E. Landau, Esquire | Akrion, Inc. and Akrion Technologies, Inc. |
|---|---|---|
| Date | Attorney-at-Law | Attorney for |

| 215-977-2052 | 215-405-2952 | dlandau@wolfblock.com |
|---|---|---|
| Telephone | FAX Number | E-Mail Address |

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)   The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)   In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.   In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)   The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)   Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)   Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1:02(e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

# UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA - DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:    Akrion, Inc. and Akrion Technologies, Inc., 6330 Hedgewood Drive, Suite #150, Allentown, PA 18106

Address of Defendant:    Product Systems, Inc., 1745 Dell Avenue, Campbell, CA 95008

Place of Accident, incident or Transaction:   Pennsylvania

*(Use Reverse Side for Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?            Yes : ☒ No☐
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))

Does this case involve multidistrict litigation possibilities?            Yes : ☐  No ☒

RELATED CASE IF ANY:   None

Civil cases are deemed related when yes is answered to any of the following questions:

1.    Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?            Yes: No ☑

2.    Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?            Yes: No ☑

3.    Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?            Yes : No☑

# CIVIL: (Place in ONE CATEGORY ONLY)

A. Federal Question Cases:

1.    ☐: Indemnity Contract, Marine Contract, and All Other Contracts
2.    ☐: FELA
3.    ☐: Jones Act-Personal Injury
4.    ☐: Antitrust
5.    ☒: Patent
6.    ☐: Labor-Management Relations
7.    ☐: Civil Rights
8.    ☐: Habeas Corpus
9.    ☐: Securities Act(s) Cases
10.   ☐: Social Security Review Cases
11.   ☐: All other Federal Question Cases

B. Diversity Jurisdiction Cases:

1.    ☑: Insurance Contract and Other Contracts
2.    ☐: Airplane Personal Injury
3.    ☐: Assault, Defamation
4.    ☐: Marine Personal Injury
5.    ☐: Motor Vehicle Personal Injury
6.    ☐: Other Personal Injury (Please specify)
7.    ☐: Products Liability
8.    ☐: Products Liability-Asbestos
9.    ☐: All other Diversity Cases

(Please specify)

(please specify):

# ARBITRATION CERTIFICATION
## (Check appropriate category)

I, David E. Landau, counsel of record do hereby certify:

☒Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000 exclusive of interest and cost;

☒Relief other than monetary damages is sought.

DATE:   January 30, 2006 _____          43341

David E. Landau                                Attorney I.D. #

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 39.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE:   January 30, 2006 _____          43341

David E. Landau                                Attorney I.D. #

PHL:5212740.1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

Akrion, Inc. and Akrion Technologies, Inc.   :
                                             :
                        V.                   :          Civil Action
                                             :          No:
Product Systems, Inc.                        :

## DISCLOSURE STATEMENT FORM

Please check one box:

           The nongovernmental corporate party, _____, in the above listed civil action docs not have any parent corporation and publicly held corporation that owns 10% or more of its stock.

☒         The nongovernmental corporate party, Akrion Technologies, Inc., in the above listed civil action has the following parent corporation(s) and publicly held corporation(s) that owns 10% or more of its stock:  Akrion, Inc.

Date:  January 30, 2006          _____
                                         Signature

                                    Counsel for:  Akrion, Inc.

Counsel for:

**Federal Rule of Civil Procedure 7.1 Disclosure Statement**
      (a) WHO MUST FILE: NONGOVERNMENTAL CORPORATE PARTY.  A nongovernmental corporate party to an action or proceeding in a district court must file two copies of a statement that identifies any parent corporation and any publicly held corporation that owns 10% or more of its stock or states that there is no such corporation.
      (b) TIME FOR FILING; SUPPLEMENTAL FILING.  A party must:
          (1)     file the Rule 7.1(a) statement with its first appearance, pleading, petition, motion, response, or other request addressed to the court, and
          (2)     promptly file a supplemental statement upon any change in the information that the statement requires.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AKRION, INC.                                          :
6330 Hedgewood Drive, Suite #150                      :
Allentown, PA 18106                                   :
                                                      :
                                                      :
        and                                           :
                                                      :
AKRION TECHNOLOGIES, INC                              :        CIVIL ACTION NO.:
6330 Hedgewood Drive, Suite #150                      :
Allentown, PA  18106                                  :
                                                      :
                                                      :
                        Plaintiff,                    :
                                                      :
                                                      :
              v.                                      :
                                                      :
                                                      :
PRODUCT SYSTEMS, INC.                                 :        JURY TRIAL DEMANDED
1745 Dell Avenue                                      :
Campbell, CA 95008                                    :
                                                      :
                                                      :
                        Defendant                     :

## COMPLAINT

## THE PARTIES

Plaintiffs, Akrion, Inc. and Akrion Technologies, Inc. bring this Complaint for patent

infringement against Defendant ProSys, Inc. and in support thereof avers as follows:

      1.    Plaintiff, Akrion Technologies Inc. ("Akrion Technologies"), is a corporation

organized and existing under the laws of the State of Delaware, with a principal place of

business at 6330 Hedgewood Drive, Suite #150, Allentown, Pennsylvania 18106.

      2.    Akrion Technologies owns a portfolio of patents covering methods and

equipment for processing substrates, including  methods and apparatus to strip, clean and/or

dry semiconductor wafers.

3.      Plaintiff, Akrion, Inc. ("Akrion"), is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 6330 Hedgewood Drive, Suite #150, Allentown, Pennsylvania 18106.

4.      Akrion is the exclusive licensee of Akrion Technologies and manufactures, advertises and sells equipment to process substrates.

5.      Upon information and belief, Product Systems, Inc. ("ProSys") is a corporation organized and existing under the laws of California and maintains its principal place of business at 1745 Dell Avenue, Campbell, CA 95008.

6.      ProSys manufactures, advertises, sells, and/or imports equipment for the processing of substrates.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338 because this action involves United States patents and under 28 U.S.C. § 1331 because this action arises under 35 U.S.C. §§ 271 *et seq.* and involves a federal question.

8.      This Court also has subject matter jurisdiction over this action pursuant to Section 39(a) of the Federal Trademark Act of 1964, also known as the Lanham Act, and under 28 U.S. C § § 1331, 1337 and 1338(a) and (b) because the action arises under the laws of the United States and plaintiff alleges claims under the trademark laws of the United States and unfair competition under the trademark laws of the United States.

9.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over state law and common law claims, which are closely related to, and form part of the same case or controversy as, the federal claims.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that ProSys is subject to personal jurisdiction in this District and a substantial part of the events giving rise to this action have occurred and continue to occur in this judicial district.

## FACTS

A.     **The Patents In-Suit**

11.     On February 14, 1989, United States Letters Patent Number 4,804,007 ('the '007 patent") entitled "Cleaning Apparatus" was duly and legally issued.  The '007 patent is valid and enforceable.

12.     The '007 patent issued from U.S. application 07/043,852, filed April 29, 1987, and thus, has a priority date of at least April 29, 1987.

13.     On February 25, 1992, United States Letters Patent Number 5,090,432 ('the '432 patent") entitled "Single Wafer Megasonic Semiconductor Wafer Processing System" was duly and legally issued.  The '432 patent is valid and enforceable.

14.     The '432 patent issued from U.S. application 07/598,426, filed October 16, 1990.  Thus, the '891 patent has a priority date of at least October 16, 1990.

15.     On April 29, 1997, United States Letters Patent Number 5,625,249 ('the '249 patent") entitled "Megasonic Cleaning System" was duly and legally issued.  The '249 patent is valid and enforceable.

16.     The '249 patent issued from U.S. application 08/277,792, filed July 20, 1994. Thus, the '792 patent has a priority date of at least July 20, 1994.

17.     On March 21, 2000, United States Letters Patent Number 6,039,059 ('the '059 patent") entitled "Wafer Cleaning System" was duly and legally issued.  The '059 patent is valid and enforceable.

18.     The '059 patent issued from U.S. application 08/724,518, filed September 30, 1996.  Thus, the '059 patent has a priority date of at least September 30, 1996.

19.     On October 15, 2002, United States Letters Patent Number 6,463,938 ('the '938 patent") entitled "Wafer Cleaning Method" was duly and legally issued.  The '938 patent is valid and enforceable.

20.     The '938 patent issued from U.S. application 09/953,504, filed September 13, 2001, which is a continuation of U.S. application 09/643,328, filed August 22, 2000, now U.S. Patent 6,295,999, issued October 2, 2001, which is a continuation of U.S. application 09/057,182, filed April 8, 1998, now U.S. Patent 6,140,744, issued October 31, 2000, which is a continuation-in-part of U.S. application 08/724,518, filed September 30, 1996, now U.S. Patent 6,039,059, issued Mar. 21, 2000.  Thus, the '938 patent has a priority date of at least April 8, 1998.

21.     On February 3, 2004, United States Letters Patent Number 6,684,891 ('the '891 patent") entitled "Wafer Cleaning" was duly and legally issued.  The '891 patent is valid and enforceable.

22.     The '891 patent issued from U.S. application 10/243,486, filed September 12, 2002, which is a continuation of U.S. application 09/953,504, filed September 13, 2001, now U.S. Patent 6,463,938, issued October 15, 2002, which is a continuation of U.S. application 09/643,328, filed August 22, 2000, now U.S. Patent 6,295,999, issued October 2, 2001, which is a continuation of U.S. application 09/057,182, filed April 8, 1998, now U.S. Patent

6,140,744, issued October 31, 2000, which is a continuation-in-part of U.S. application

08/724,518, filed September 30, 1996, now U.S. Patent 6,039,059, issued Mar. 21, 2000.

Thus, the '891 patent has a priority date of at least April 8, 1998.

23.    The '007 patent, the '432 patent, the '249 patent, the '059 patent, the '938

patent and the '891 patent (collectively "the Patents-in-Suit") relate generally to apparatus to

clean substrates, such as semiconductor wafers, using megasonic energy.  As a general

matter, the use of megasonic energy to clean semiconductor wafers involves the application

of acoustical vibrations to a surface of a semiconductor wafer at megasonic frequencies to

assist in the dislodging of particles and/or other contaminants.

24.    The claims set forth in the '007 patent are directed to, <u>inter alia</u>, a transducer

array for use in a megasonic cleaning system, comprising:  (i) a flat plate made of quartz or

sapphire or boron nitride; and (ii) a transducer having a conductive flat surface bonded to the

flat plate and a conductive surface spaced from the flat surface, the transducer and the plate

being adapted to oscillate to propagate a beam of megasonic energy applied to the

conductive surfaces.

25.    The claims set forth in the '432 patent are directed to, <u>inter alia</u>, an apparatus

for cleaning a single semi-conductor wafer at one time comprising: (i) a container having a

bottom wall and a plurality of upstanding walls, supports in the container for supporting a

wafer such that two large flat, spaced surfaces of the wafer extend generally vertically, the

upstanding walls including upper portions defining a thin, flat vertically oriented space for

receiving a wafer, the space having a generally rectangular cross section defined by two side

walls having flat, generally vertically oriented surfaces closely spaced from each other, the

side walls being joined by two edge walls which are spaced from each other a distance

slightly greater than a diameter of the wafer, the upstanding walls extending to an open upper end for receiving and permitting withdrawal of a wafer from the container; and (ii) a device in the lower portion of the container for propagating megasonic energy upwardly in the container to agitate cleaning liquid in the container for purposes of dislodging particulates from the surfaces of a wafer.

26.     The claims set forth in the '249 patent are directed to, inter alia, a megasonic cleaning system comprising: (i) a cleaning tank adapted to hold cleaning liquid and an article to be cleaned in the cleaning liquid; (ii) first and second arrays of transducers for converting electrical energy into acoustical energy, the first and second arrays being adapted to transmit acoustical energy at substantially megasonic frequencies into the cleaning liquid; (iii) a source of electrical energy oscillating at substantially megacycle frequencies for driving the arrays at the substantially megasonic frequencies, the source being coupled to a switch adapted to provide the electrical energy to either the first array or the second array; and (iv) a switch controller for commanding the switch to provide the electrical energy alternately to the first and the second arrays.

27.     The claims set forth in the '059 patent are directed to, inter alia, a cleaning apparatus for loosening and removing particles from an article having a planar surface, comprising: (i) a support for the article; (ii) a probe having an elongated side surface extending close to and generally parallel to the planar surface of the article; (iii) a nozzle positioned to apply cleaning fluid between the probe side surface and the planar surface, the probe being sufficiently close to the surface so that a meniscus of the fluid is formed along the length of the probe between the probe and the surface; (iv) a transducer coupled to the probe and adapted to oscillate at a frequency for propagating megasonic energy through the

probe and into the meniscus; and (v) a motor producing relative movement between the probe and the planar surface while the meniscus is maintained.

28.     The claims set forth in the '938 patent are directed to, inter alia, a cleaning apparatus comprising: (i) a support for a generally flat article to be cleaned; (ii) a vibration transmitter having a rear portion configured to be supported adjacent to the article support and having an elongated forward portion extending over the article support to be closely spaced above an article positioned on the support; (iii) a source of fluid for supplying fluid onto the article, the forward portion being sufficiently close to the article so that a meniscus of the fluid is formed between the forward portion and the article; and (iv) a transducer coupled to the transmitter, the transducer being adapted to oscillate at a frequency for propagating megasonic energy through the forward portion and into the fluid between the forward portion and the article so as to cause particles on the surface of the article to be loosened.

29.     The claims set forth in the '938 patent are also directed to, inter alia, a cleaning apparatus for loosening and removing particles from an article having a planar surface, comprising: (i) a support for the article; (ii) a vibration transmitter including an elongated edge extending close to and generally parallel to the planar surface of the article; (iii) a source of fluid positioned to apply cleaning fluid between the edge and the planar surface, the edge being sufficiently close to the surface so that a meniscus of the fluid is formed along the edge between the edge and the surface; and (iv) a transducer coupled to the edge and adapted to oscillate at a frequency propagating megasonic energy through the edge and into the meniscus.

30.     The claims set forth in the '891 patent are directed to, <u>inter alia</u>, a cleaning apparatus comprising: (i) a vibration transmitter including a portion configured to be positioned adjacent to a surface of a semiconductor wafer; (ii) a housing; (iii) a transducer in the housing coupled to the transmitter and adapted to oscillate at a frequency for propagating megasonic energy to vibrate the transmitter portion so that when the portion is coupled to a surface of an article to be cleaned, particles on the article are loosened; and (iv) openings in the housing for flowing gas into and out of a space in the housing in contact with the transducer.

31.     Through a series of intellectual property assignments, all right, title, and interest in the Patents in-Suit, including the '007 patent, the '432 patent, the '059 patent, the '938 patent, the '249 patent and the '891 patent have been assigned to Akrion Technologies. This assignment included all claims and causes of action relating to any of the patents, including the '007 patent, the '432 patent, the '059 patent, the '938 patent and the '891 patent.

32.     All assignments have been filed and duly recorded in the United States Patent & Trademark Office ("USPTO") to evidence that Akrion Technologies is the current assignee and owner of the Patents-in-Suit.

33.     Akrion Technologies has granted an exclusive license of the Patents in-Suit to Akrion, Inc. including the right to prosecute claims for infringement.

**B.    The Akrion Trademark**

34.     Akrion Technologies is the owner of trademark AKRION, registration number 2,691,002.

35.     AKRION has been registered with the USPTO since 2003 as a federal trademark for goods and services in connection with, inter alia, machines for cleaning, rinsing and drying semi-conductor wafers.  The first use of AKRION was October 1, 1999.

36.     Akrion has promoted the goods and services in connection with the mark throughout the world.  The mark has been prominently displayed on Akrion's website, which Akrion has continually and openly maintained and made available to the public.

37.     As a result of Akrion's marketing campaign, AKRION has become widely known through the semi-conductor industry and is readily identified with Akrion.  As a result of Akrion's extensive use of the mark, and the quality goods and services in connection with the marks, the mark have become well known and famous and represent the substantial good will of Akrion.

38.     By virtue of the good will and reputation associated with the mark and Akrion's extensive and longstanding use of the marks, Akrion has strong secondary meaning and significance in the minds of consumers in the relevant industries.

C.     **ProSys' Infringing Activities**

       1.     **Patent Infringement**

39.     ProSys has used, manufactured, sold and/or offered for sale its MegPie Product line, Single Substrate Cleaner, Microknife, Laboratory Megasonics Systems, Tank Systems, Mark-I StandAlone Megasonic Cleaner and Plate Transducer Array Products (collectively the "Infringing Products") in the United States.

40.     Upon information and belief, the Infringing Products are megasonic cleaning equipment for cleaning semiconductor wafers that contain:  (i) a quartz or sapphire flat plate transmitter; and (ii) a transducer having a conductive surface bonded to the flat plate

transmitter.  The transducer and the flat plate transmitter are adapted to oscillate so as to propagate a beam of megasonic energy.

41.     Upon information and belief, one or more of the Infringing Products constitute megasonic cleaning equipment  comprising: (i) a container having a bottom wall and a plurality of upstanding walls, supports in the container for supporting a wafer such that two large flat, spaced surfaces of the wafer extend generally vertically, the upstanding walls including upper portions defining a thin, flat vertically oriented space for receiving a wafer, the space having a generally rectangular cross section defined by two side walls having flat, generally vertically oriented surfaces closely spaced from each other, the side walls being joined by two edge walls which are spaced from each other a distance slightly greater than a diameter of the wafer, the upstanding walls extending to an open upper end for receiving and permitting withdrawal of a wafer from the container; and  (ii) a device in the lower portion of the container for propagating megasonic energy upwardly in the container to agitate cleaning liquid in the container for purposes of dislodging particulates from the surfaces of a wafer.

42.     Upon information and belief, one or more of the Infringing Products constitute megasonic cleaning equipment  comprising: (i) a cleaning tank adapted to hold cleaning liquid and an article to be cleaned in the cleaning liquid; (ii) first and second arrays of transducers for converting electrical energy into acoustical energy, the first and second arrays being adapted to transmit acoustical energy at substantially megasonic frequencies into the cleaning liquid; (iii) a source of electrical energy oscillating at substantially megacycle frequencies for driving the arrays at the substantially megasonic frequencies, the source being coupled to a switch adapted to provide the electrical energy to either the first

array or the second array; and (iv) a switch controller for commanding the switch to provide the electrical energy alternately to the first and the second arrays.

43.    Upon information and belief, one or more of the Infringing Products constitute megasonic cleaning equipment  that either by itself, and/or when incorporated into a cleaning tool in accordance with its intended use, comprise: (i) a support for the article; (ii) a probe having an elongated side surface extending close to and generally parallel to the planar surface of the article; (iii) a nozzle positioned to apply cleaning fluid between the probe side surface and the planar surface, the probe being sufficiently close to the surface so that a meniscus of the fluid is formed along the length of the probe between the probe and the surface; (iv) a transducer coupled to the probe and adapted to oscillate at a frequency for propagating megasonic energy through the probe and into the meniscus; and (v) a motor producing relative movement between the probe and the planar surface while the meniscus is maintained.

44.    Upon information and belief, one or more of the Infringing Products constitute megasonic cleaning equipment that either by itself, and/or when incorporated into a cleaning tool in accordance with its intended use, comprise: (i) a support for a generally flat article to be cleaned; (ii) a vibration transmitter having a rear portion configured to be supported adjacent to the article support and having an elongated forward portion extending over the article support to be closely spaced above an article positioned on the support; (iii) a source of fluid for supplying fluid onto the article, the forward portion being sufficiently close to the article so that a meniscus of the fluid is formed between the forward portion and the article; and (iv) a transducer coupled to the transmitter, the transducer being adapted to oscillate at a frequency for propagating megasonic energy through the forward portion and

into the fluid between the forward portion and the article so as to cause particles on the surface of the article to be loosened.

45. Upon information and belief, one or more of the Infringing Products constitute megasonic cleaning equipment that either by itself, and/or when incorporated into a cleaning tool in accordance with its intended use, comprise: (i) a support for the article; (ii) a vibration transmitter including an elongated edge extending close to and generally parallel to the planar surface of the article; (iii) a source of fluid positioned to apply cleaning fluid between the edge and the planar surface, the edge being sufficiently close to the surface so that a meniscus of the fluid is formed along the edge between the edge and the surface; and (iv) a transducer coupled to the edge and adapted to oscillate at a frequency propagating megasonic energy through the edge and into the meniscus.

46. Upon information and belief, one or more of the Infringing Products constitute megasonic cleaning equipment comprising: (i) a vibration transmitter positioned adjacent to a surface of a semiconductor wafer; (ii) a housing; (iii) a transducer in the housing that is coupled to the transmitter and adapted to oscillate at a frequency for propagating megasonic energy to vibrate the transmitter so that when the transmitter is coupled to a surface of an to be cleaned, particles on the article are loosened; and (iv) openings in the housing for flowing gas into and out of a space in the housing in contact with the transducer.

47. Each of the Infringing Products incorporate one or more of the inventions claimed in the Patents-in-Suit and, accordingly, infringe those patents.

48.     Upon information and belief, ProSys has sold the Infringing Products to customers, including, at least, one potential customer of Akrion Technologies and its affiliated companies.

49.     Prosys has not sought or obtained a license and is not authorized or permitted to market, manufacture, use. offer for sale, or sell products incorporating any of the inventions claimed in the Patents-in-Suit.

## 2.      **Trademark Infringement**

50.     Upon information and belief, ProSys maintains a website, www.prosysmeg.com.  The landing page of prosys.com has a tool bar on the left which includes the category called "Products".  When a visitor to the cite clicks on products, the visitor is directed to the page www.prosysmeg.com/product/.  The products page contains a listing of products.  The second item on the list is "Phaser Replacement".

51.     When the "Phaser Replacement" item is clicked, the visitor is directed to another page which prominently displays a picture and beneath the picture t states "Prosys is now providing sms/Akrion Megasonic Transducer spares for the Series 1 or 2 . . ."  Upon information and belief, the picture portrays an Akrion product.  The message conveyed by this page is that ProSys has been authorized by Akrion to sell an Akrion product.

52.     Akrion has not given permission to Prosys to use the Akrion mark or to market itself as affiliated with or authorized by Akrion.

53.     ProSys through its unauthorized use of the mark has wrongfully, willfully and intentionally interfered with Akrion's use of its mark.

54.     ProSys has used the Akrion marks wrongfully, willfully and illegally to interfere with Akrion's business to the economic detriment of Akrion by misrepresenting the

source and origin of the services offered under the Akrion marks and causing the likelihood

of customer confusion about the marks.

55.     ProSys is falsely advertising that it is selling Akrion products.


## COUNT I
## DIRECT PATENT INFRINGEMENT UNDER 35 U.S.C. § 271(a)

56.     The allegations of paragraphs 1-55as are incorporated are fully set forth at

length herein.

57.     Through its offer for sale, sale, manufacture and/or use of the Infringing

Products, ProSys sold, offered to sell, manufactured, and/or used megasonic cleaning

equipment for cleaning semiconductor wafers that infringe the Patents-in-Suit, thereby

violating 35 U.S.C. § 271 (a) in this judicial district and elsewhere in the United States and

will continue to do so unless enjoined by this Court.

58.     With full knowledge of the Patents-in-Suit, the conduct by ProSys in

infringing the Patents-in-Suit has been willful and deliberate, and in total disregard of Akrion

Technologies' and Akrion's lawful rights in the Patents-in-Suit, thus rendering this case

"exceptional" under 35 U.S.C. § 285.

59.     Akrion Technologies and Akrion, Inc. have suffered monetary damages as a

result of the infringing actions of ProSys with respect to the Patents-in-Suit in an amount in

excess of $150,000.

60.     The infringement by ProSys of the Patents-in-Suit has irreparably harmed

Akrion Technologies and Akrion, Inc. and will continue to do so unless enjoyed by this

Court.

WHEREFORE, Plaintiffs Akrion Technologies, Inc. and Akrion, Inc. respectfully request this Court to:

A.  Enjoin ProSys, and their respective agents, servants, representatives, officers, directors, employees, affiliates and all persons acting in concert with them, directly or indirectly, from infringing, inducing others to infringe and/or contributing to the infringement of the Patents-in-Suit;

B.  Award Plaintiffs compensatory damages, in an amount in excess of One Hundred Thousand Dollars ($150,000), together with interest and costs of suit;

C.  Award Plaintiffs enhanced damages up to treble the amount found or assessed ;

D.  Declare this case "exceptional" and award Plaintiffs their reasonable attorneys' fees; and

E.  Grant Plaintiffs such other relief as is just and proper.

## COUNT II
## INDIRECT PATENT INFRINGEMENT UNDER 35 U.S.C. §§ 271(b) and (c)

61.  The allegations of paragraphs 1-60 as are incorporated are fully set forth at length herein.

62.  Through its offer for sale, sale, manufacture and/or use of the Infringing Products, ProSys caused to be sold, offered for sale, used and/or manufactured, megasonic cleaning tools for cleaning semiconductor wafers that infringe the Patents-in-Suit, thereby violating 35 U.S.C. §§ 271 (b) and (c) in this judicial district and elsewhere in the United States and will continue to do so unless enjoined by this Court.

63.     With full knowledge of the Patents-in-Suit, the conduct by ProSys in indirectly infringing the Patents-in-Suit has been willful and deliberate, and in total disregard of Akrion Technologies' and Akrion, Inc.'s lawful rights in the Patents-in-Suit, thus rendering this case "exceptional" under 35 U.S.C. § 285.

64.     Plaintiffs have suffered monetary damages as a result of the indirect infringing actions of ProSys with respect to the Patents-in-Suit in an amount in excess of $150,000.

65.     The infringement by ProSys of the Patents-in-Suit has irreparably harmed Akrion Technologies and Akrion, Inc. and will continue to do so unless enjoyed by this Court.

WHEREFORE, Plaintiffs Akrion Technologies,  Inc. and Akrion, Inc. respectfully request this Court to:

A.     Enjoin ProSys, and their respective agents, servants, representatives, officers, directors, employees, affiliates and all persons acting in concert with them, directly or indirectly, from infringing, inducing others to infringe and/or contributing to the infringement of the Patents-in-Suit;

B.     Award Plaintiffs compensatory damages, in an amount in excess of One Hundred Fifty Thousand Dollars ($15,000), together with interest and costs of suit;

C.     Award Plaintiffs enhanced damages up to treble the amount found or assessed pursuant to 35 U.S.C. § 284 in light of ProSys' deliberate and willful infringement of the Patent in-Suit;

D.     Declare this case "exceptional" and award Plaintiffs their reasonable attorneys' fees pursuant to 35 U.S.C. § 285; and

E.      Grant Plaintiffs such other relief as is just and proper.

## COUNT III

## FEDERAL TRADEMARK INFRINGEMENT
## IN VIOLATION OF 15 U.S.C. SECTION 1114

66.      Paragraphs 1-64 of the Complaint are incorporated by reference as fully set forth below.

67.      Akrion is the owner of the trademark AKRION and is the owner of U.S. Reg. No. 2,691,002 for AKRION used in connection with semiconductor manufacturing machines, semiconductor substrates manufacturing machines, semiconductor wafer processing machines, namely wet stations for use to clean, etch, strip, rinse, and dry semiconductor wafers and integrated circuits, automated wet immersion surface preparation equipment for the manufacture of semiconductors, wet stations for manufacture of semiconductors, etch stations, dryers.

68.      The Akrion mark is inherently strong and distinctive and Plaintiff has been using the mark in interstate commerce in connection with semi-conductor goods and services since 1999.

69.      ProSys' use of the mark on its websites and upon information and belief in other places is a business an interstate commerce and is without the permission, authorization or license of Akrion.  ProSys' unauthorized use of the federally registered Akrion mark is likely to confuse an appreciable number of consumers into believing that ProSys goods and services those of or related to Akrion when in fact, they are not.  Accordingly, ProSys is infringing upon Akrion's federally registered trademark.

70.      By engaging in the foregoing infringement, ProSys has violated Section 32 of the Lanham Act, 15 U.S.C. Section 1114.

71.     ProSys' actions described above have damaged Akrion.  Moreover, ProSys has caused and will continue to cause irreparable injury to Akrion's good will and reputation for which Akrion has no adequate remedy at law.

72.     ProSys' infringement of the Akrion mark is willful, wanton and outrageous and entitles Akrion to recover punitive damages.

WHEREFORE, Plaintiffs Akrion Technologies, Inc and Akrion, Inc. respectfully request this Court to:

A.     Enjoin ProSys, and their respective agents, servants, representatives, officers, directors, employees, affiliates and all persons acting in concert with them from infringing on the Akrion trademark;

B.     Award Plaintiffs compensatory damages, in an amount in excess of One Hundred Thousand Dollars ($150,000), together with interest and costs of suit pursuant to 15 U.S.C. § 1117;

C.     Award Plaintiffs enhanced damages up to treble the amount found or assessed pursuant to 15 U.S.C. § 1117 in light of ProSys' deliberate and willful infringement of Plaintiffs' trademark; and

D.     Award Plaintiffs their reasonable attorneys' fees.


## COUNT IV

### FALSE DESIGNATION OF ORIGIN, FALSE REPRESENTATION AND FALSE ADVERTISING IN VIOLATION OF 15 U.S.C. SECTION 1125(a)

73.     Paragraphs 1-71 of the Complaint are incorporated by reference as fully set forth below.

74.     Plaintiffs and Defendant are competing for the same national and international clients in the semi-conductor industry.

75.     ProSys' unauthorized use in business and interstate commerce of the Akrion mark has intentionally and willfully mislead and deceived and will continue to mislead and deceive an appreciable number of consumers into believing ProSys' goods and services originate with, are licensed by, or somehow sanctioned by or otherwise affiliated Akrion, when in fact, they are not.

76.     Accordingly, ProSys engaged in unfair competition through its false designation of origin, false description and false advertising.

77.     By engaging in or contributing to the foregoing false designation of origin, false description of representation and/or false advertising, Defendants violate Section 42 of the Lanham Act 15 U.S.C. Section 1125(a).

78.     ProSys' actions described above have damaged Akrion.  Moreover, Defendants have caused or continue to cause irreparable injury to Plaintiffs' good will and reputation for which Plaintiffs have no adequate remedy at law.

79.     Defendant's false designation of origin, false representations and false advertising in connection with the Akrion mark is willful want and outrageous entitles Akrion to recover punitive damages.

WHEREFORE, Plaintiffs Akrion Technologies, Inc and Akrion, Inc. respectfully request this Court to:

A.     Enjoin ProSys, and their respective agents, servants, representatives, officers, directors, employees, affiliates and all persons acting in concert with them from infringing on the Akrion trademark;

B.    Award Plaintiffs compensatory damages, in an amount in excess of One Hundred Thousand Dollars ($150,000), together with interest and costs of suit pursuant to 15 U.S.C. § 1117;

C.    Award Plaintiffs enhanced damages up to treble the amount found or assessed pursuant to 15 U.S.C. § 1117 in light of ProSys' deliberate and willful infringement of Plaintiffs' trademark; and

D.    Award Plaintiffs their reasonable attorneys' fees.

## COUNT V

## COMMON LAW TRADEMARK INFRINGEMENT

80.    Paragraphs 1 through 79 of the Complaint are incorporated by reference as if fully set forth below.

81.    Akrion owns common law trademark rights in the mark AKRION, which it has promoted in conjunction with Akrion products and services and has used continually in commerce since 1999.

82.    Akrion owns common law trademark rights in the mark AKRION trademark in addition to its rights under federal law.

83.    Defendants' use of AKRION in connection with products displayed, sold and distributed by Defendant is likely to cause confusion with defendant and its association with Plaintiff and with Plaintiff's products including, but not limited to, initial customer confusion, mistake or deception as to origin, sponsorship or approval of the goods and services of Defendant.

84.     Defendant's actions described above have damaged Akrion.  Moreover, Defendant has caused and are continuing to cause irreparable injury to Akrion's goodwill and reputation for which Akrion has no remedy at law.

85.     Defendant's common law infringement of the AKRION trademark is willful, wanton and outrageous and entitles plaintiff to recover punitive damages.

WHEREFORE, Plaintiffs Akrion Technologies, Inc and Akrion, Inc. respectfully request this Court to:

A.     Enjoin ProSys, and their respective agents, servants, representatives, officers, directors, employees, affiliates and all persons acting in concert with them from infringing on the Akrion trademark;

B.     Award Plaintiffs compensatory damages, in an amount in excess of One Hundred Thousand Dollars ($150,000), together with interest and costs of suit; and

C.     Award Plaintiffs punitive damages.

## COUNT VI

### TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION PURSUANT TO 54 PA.C.S.A SECTIONS 1123 AND 1125

86.     Paragraphs 1 through 85 of the Complaint are incorporated by reference as if fully set forth below

87.     Akrion is the owner of the AKRION trademark including, without limitation, the federally registered mark AKRION.

88.     Defendant's use of the AKRION trademark on the ProSys website to sell products which, in fact, are not Akrion products in business in interstate commerce is without the permission, authorization or license of Akrion.

89.     Defendant's unauthorized use of the federally registered AKRION trademark has likely confused consumers, and will continue to confuse an appreciable number of consumers into believing that Defendant's products and the goods and services promoted at the Defendant's website are those of, or related to Plaintiff's when, in fact, they are not.

90.     Accordingly, Defendants are infringing Akrion's federally registered trademarks.

91.     The actions of Defendant also constitute unfair competition in the form of false designation or origin, false description of representation and false advertising.

92.     By engaging in the foregoing infringement and unfair competition, Defendants have violated 54 Pa. C.S.A. § § 1123 and 54 Pa. C.S.A. § 1125.

93.     Defendant's action described above have damaged Akrion.  Moreover, Defendant has caused and are continuing to cause irreparable injury to Plaintiff's goodwill and reputation for which Plaintiff has no remedy at law.

94.     Defendant's infringement of the federally registered AKRION trademark is willful, wanton and outrageous and entitles Plaintiff to recover punitive damages.

WHEREFORE, Plaintiffs Akrion Technologies, Inc and Akrion, Inc. respectfully request this Court to:

A.     Enjoin ProSys, and their respective agents, servants, representatives, officers, directors, employees, affiliates and all persons acting in concert with them from infringing on the Akrion trademark;

B.     Award Plaintiffs compensatory damages, in an amount in excess of One Hundred Thousand Dollars ($150,000), together with interest and costs of suit.

C.     Award Plaintiffs punitive damages; and

D.    Award Plaintiffs their reasonable attorneys' fees.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs, Akrion Technologies, Inc. and Akrion, Inc. demand a trial by jury on all triable

issues of fact.

WOLF BLOCK SCHORR AND SOLIS-COHEN, LLP

By: _____

David E. Landau, Esquire
Robert F. Zielinski, Esq.
1650 Arch Street
22nd Floor
Philadelphia, PA 19103
Telephone: 215.977.2052
Facsimile: 215.405.2952

Dated:  January 30, 2006           Attorneys for Plaintiffs

## SUMMONS IN A CIVIL ACTION

### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**Akrion, Inc.**
**6330 Hedgewood Drive, Suite #150**
**Allentown, PA  18106**

**and**

**Akrion Technologies, Inc.**
**6330 Hedgewood Drive, Suite #150**
**Allentown, PA  18106**

Plaintiff,

v.

**Product Systems, Inc.**
**1745 Dell Avenue**
**Campbell, CA  95008**

Defendant.

CIVIL ACTION NO.

TO: Product Systems, Inc.
    1745 Dell Avenue
    Campbell, CA  95008

### YOU ARE HEREBY SUMMONED and required to serve upon

Plaintiff's Attorney (Name and Address)

**David E. Landau, Esquire**
**Wolf, Block, Schorr and Solis-Cohen LLP**
**1650 Arch Street, 22nd Floor**
**Philadelphia, PA  19103-2097**
**(215) 977-2293**

an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint

| Michael E. Kunz, Clerk of Court | Date:   January 30, 2006 |
|---|---|
| (By)  Deputy Clerk | |

AO 440 (Rev. 10/93) Summons in a Civil Action

### RETURN OF SERVICE

| Service of the following was made by me[1]:<br><br>**Complaint and Summons** | DATE |
|---|---|
| NAME OF SERVER (*PRINT*) | TITLE |

*Check one box below to indicate appropriate method of service*

Served personally upon the defendant.  Place where served _____
_____

Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

Returned unexecuted: _____
_____
_____

Other (specify): _____
_____
_____

### STATEMENT OF SERVICE FEES

| Travel | Services | Total |
|---|---|---|

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____        _____
           Date                              Signature of Server

                                         _____
                                         Address of Server

[1] As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

PHL:5312437.1                                   - 2 -

**WOLF, BLOCK, SCHORR AND SOLIS-COHEN LLP** PNC Bank, N.A.
1650 ARCH STREET                                           New Jersey
PHILADELPHIA, PA 19103-2097

CHECK NO.  306236

Date:     01/26/06

$$\frac{55\text{-}277}{312}$$

Pay Exactly     TWO HUNDRED FIFTY AND 00/100 DOLLARS

Amount     $ * * * * * * * 250.00
NOT VALID AFTER 6 MONTHS

PAY
TO THE        Clerk, U.S.D.C., Eastern Distict of PA
ORDER OF

⑈"306236"⑈ ⑆:031202770: 8009243558⑈"